**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

_____
                                    )
UNITED STATES OF AMERICA            )
                                    )
         v.                         )   Cr. No. 11-04-01 S
                                    )
LUIGI MANOCCHIO,                    )
a/k/a "Louie,"                      )
a/k/a "Baby Shacks,"                )
a/k/a "The Professor,"              )
a/k/a "The Old Man,"                )
THOMAS IAFRATE,                     )
a/k/a "Tommy,"                      )
THEODORE CARDILLO,                  )
a/k/a "Teddy,"                      )
RICHARD BONAFIGLIA                  )
_____)

### ORDER

WILLIAM E. SMITH, United States District Judge.

Before the Court is the Government's motion pursuant to 18 U.S.C. § 3145(a)(1) to revoke Magistrate Judge David L. Martin's March 11, 2011 Memorandum and Order denying the government's motion to detain Defendant Luigi Manocchio and setting conditions of release. The Court held a hearing on the matter on March 23, 2011.

A district court reviews de novo a magistrate judge's findings with respect to pretrial detention or release orders. United States v. Tortora, 922 F.2d 880, 883 n.4 (1st Cir. 1990).

A defendant may be detained pending trial only if the Government establishes (1) by clear and convincing evidence that

no condition or combination of conditions will reasonably assure the safety of the community, or (2) by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant. 18 U.S.C. § 3142; United States v. Patriarca, 948 F.2d 789, 792-793 (1st Cir. 1991). The Magistrate Judge found that the Government failed to clear this bar as to both grounds, and consequently ordered Defendant released on various and stringent terms and conditions, all of which are outlined in detail at the end of his Memorandum and Order.

The Court incorporates by reference the Magistrate Judge's thorough and accurate recitation of the facts, explanation of the relevant legal standard, factors to be considered under 18 U.S.C. § 3142, and his finding that certain release conditions would reasonably assure the safety of the community.[1] However, because of the concerns expressed below, the Court concludes that the Government has met its burden of proving by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of Defendant. Therefore, because this Court finds that the Government has met its burden with respect to this factor, the Government's motion is granted, Sections V, VII and VIII of the

---

[1] See infra note 5.

2

Magistrate Judge's Memorandum and Order are revoked, and the Defendant is Ordered detained.

In assessing whether to detain a defendant pending trial, 18 U.S.C. § 3142(g) mandates the following:

> The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required <u>and</u> the safety of any other person and the community, take into account the available information concerning—
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

(Emphasis added.) In determining either risk-of-flight or dangerousness,[2] the plain language of this statute makes clear that a court must consider these four factors in conjunction with and not in isolation of each other. In other words, with respect to risk-of-flight, these factors form the totality of the circumstances from which a court must decide, by a preponderance of the evidence, that no condition or combination of conditions will reasonably assure the appearance of a defendant.

---

[2] The requirement is described in the disjunctive, thus a defendant can be detained on the basis of either dangerousness or risk-of-flight.

3

Addressing the first factor, the Magistrate Judge correctly found that Defendant is charged with a crime of violence, which "weighs in favor of detention." (Mem. & Order 6 (citing United States v. Ciccone, 312 F.3d 535, 542 (2nd Cir. 2002) (holding RICO conspiracy to commit extortion a crime of violence under the Bail Reform Act)). He found this factor allayed somewhat because Defendant's acts were not as serious or violent as certain cases cited by the Government in support of its request for detention.[3] (Id.) But, notably, six out of seven of those cases, which are listed in the Memorandum and Order, involved predicate acts of murder or attempted murder. (Id. 6-7.) While Defendant is not charged with a crime as serious as murder, the crime of extortion and the threats, implied force, violence and fear that come with it are not to be taken lightly. Moreover, by specifically enumerating "crimes of violence" as a factor for courts to consider, 18 U.S.C. § 3142(g)(1), Congress clearly intended to imbue it with significance. Thus, notwithstanding the comparatively less severe nature of the crime as compared to other cases, Defendant's indictment for a crime of violence (i.e., extortion) weighs in favor of his detention.

Regarding the second factor, the weight of the evidence, the Magistrate Judge "accept[ed] the Government's representation

---

[3] The Government argued on appeal that these cases were cited for the analysis applied by the respective Courts not for a comparison of the crimes charged.

4

regarding the evidence described [] and [found] that the evidence against Manocchio _is_ substantial." (Mem. & Order 12 (Emphasis added.)) He nonetheless distinguished this case, finding Defendant's position with respect to the weight of the evidence to be "qualitatively different" or less compelling than that of defendants in other cases cited by the Government. (Id. at 14.) But this factor requires consideration of only the "weight of the evidence against the person," 18 U.S.C. § 3142(g)(2), not whether such evidence is more or less substantial than that proffered in other cases. This Court agrees with the Magistrate Judge that the evidence against Defendant _is_ substantial, and as such, this factor also weighs in favor of detention.

The Court is also in agreement with the bulk of the Magistrate Judge's discussion of the third factor, 18 U.S.C. § 3142(g)(3), regarding the history and characteristics of Defendant. Some additional comments regarding this factor are in order, however.

Despite turning himself in after ten years on the lam, and his good record with respect to court appearances since, the Court is deeply troubled by Defendant's history of ten years (1969-1979) of fugitive status in a prior murder case. Although he returned to Rhode Island voluntarily, it was essentially a negotiated surrender, and one that Defendant made only after it

5

became apparent that the State's case against him had become significantly weakened as a result of a witness's alleged memory problems and Defendant's exposure to a lengthy prison term had lessened. This Court, in assessing the 18 U.S.C. § 3142 factors, has considered fugitive status of a significantly shorter duration (albeit more recent) sufficient to deny release. See United States v. DeSimone, CR No. 09-024S, 2009 WL 904688, at *3 (D.R.I. Apr. 1, 2009) (finding defendant a flight risk and denying bail after he escaped from a federal detention center for several days before turning himself in to authorities).

The Court also notes the peculiar circumstances of the Defendant's claimed limited financial resources (only $900 cash-on-hand and a $985/month Army pension) and the fact that he has never maintained a bank account or credit card. These facts do not militate against a finding that he is a flight risk. To the contrary, these facts raise a red flag to the Court. The Government has pointed out that this Defendant has recently been found with large amounts of cash on his person despite having no apparent source of income. Over the past ten years, Defendant has taken numerous trips domestically and abroad, including one international trip on a private jet belonging to his friend, Frank Zammiello. Defendant is a capable and experienced international traveler with virtually no financial 'footprint'

or substantial ties to Rhode Island (such as property or immediate family), that would be left behind as a result of flight.

Defense counsel's assertions that Government-maintained "no fly" lists and other such air travel regulations would be sufficient to prevent Defendant from fleeing the jurisdiction are unpersuasive, especially in light of the fact that Defendant would likely have access to false identification documents through his extensive network of associates. In addition, air travel is not the only available mechanism for flight. The fact that Defendant has been able to live a fairly lavish lifestyle on a miniscule claimed income suggests that Defendant has hidden resources available to him, well beyond the ordinary defendant, which would easily enable him effectively to flee the jurisdiction and disappear into a life of obscurity.[4] It also bears noting that not only has Defendant himself previously absconded, there is a history of similarly situated alleged

---

[4] The Court notes that the proposed conditions of release of GPS tracking and confinement at his brother's rural Foster-Glocester estate do not assuage the Court's concerns. The GPS tracking bracelet can be easily cut off with a pair of pliers, and with the right preparations, an escape from his brother's rural neighborhood could be carried out quite easily. Moreover, the condition of no cellular phone communication is similarly unavailing since such a condition is very difficult to enforce as a practical matter. Despite these conditions, Defendant would likely have some access, either direct or indirect, to a form of electronic communication, be it a telephone or a computer, to use to contact individuals who might assist in such a potential escape.

organized crime figures who have managed to flee and remain undetected for many years. Most prominent in this class of defendants, of course, is James J. "Whitey" Bulger who remains one of the most wanted men in America. More recently, Enrico Ponzo, missing since 1994, was captured in rural Idaho. The combination of Defendant's actual successful flight from justice decades ago, the practice of fleeing that is not uncommon in the world of organized crime, and Defendant's own peculiar financial and personal circumstances which would appear to enable and facilitate flight, is compelling and cannot be ignored.

The fourth and final consideration in the analysis is the nature and seriousness of the danger to any person or the community that would be posed by the Defendant's release. 18 U.S.C. § 3142(g)(4). On this factor, the Magistrate Judge found that the Government failed to meet its burden because "[it] has not identified a single instance of actual violence (as opposed to a threat of such violence) being carried out." (Mem. & Order 26.) This Court is less convinced. Here, the Court sees no reason to distinguish between actual violence and threats of violence. As discussed above, extortion is a very serious offense. Moreover, § 3142(g)(4) requires inquiry into the "seriousness of the danger to <u>any</u> person or the community that would be posed by the person's release." (Emphasis added.) This

suggests that the Court look beyond the crime alleged to assess the potential for dangerousness.

Here, Defendant has yet to directly dispute his leadership role over the La Cosa Nostra, (Mem. & Order 15), and no one would dispute that the purpose of such a criminal enterprise is to engage in illegal and violent activity against others to obtain economic benefit. This Court and others have even considered mere economic harm a "danger" cognizable under 18 U.S.C. § 3142(g)(4). DeSimone, 2009 WL 904688, at *2 (citing United States v. Persaud, No. 05-cr-368, 2007 WL 1074906, at *1 (N.D.N.Y. Apr. 5, 2007) ("economic harm qualifies as a danger within the contemplation of the Bail Reform Act"); and United States v. Giordano, 370 F. Supp. 2d 1256, 1270 (S.D. Fla. 2005) ("no question that an economic danger, like that posed by a serial defrauder, falls under the broad umbrella of 'dangerousness' as that term is used throughout the Bail Reform Act")(citation omitted)). Given Defendant's extensive associations with and alleged leadership of a well-known organized crime family, the Court finds this prong of § 3142(g) to weigh against Defendant as well.[5] Patriarca, 948 F.2d at 795

---

[5] While the Court is satisfied that the Government has proved Defendant's dangerous by a preponderance of the evidence, it is not so persuaded that it has done so by clear and convincing evidence. As such, the Court declines to amend the Magistrate Judge's holding denying detention based on dangerousness.

9

("Membership in, and leadership of, a Mafia Family are undoubtedly highly relevant considerations in the pretrial detention analysis.") (internal quotations and citation omitted).

After engaging the relevant factors, the Magistrate Judge held "that the Government [] failed to meet its burden [regarding risk-of-flight] for the following reasons": (1) Defendant's prolonged awareness of the investigation that precipitated the instant charges, (2) the willingness of Defendant's brother and nephew to post roughly a half million dollars in home equity as bond; (3) that upon returning to Rhode Island after ten years as a fugitive on charges of accessory before the fact and conspiracy to commit murder, Defendant was fully compliant with the release conditions and appeared for all subsequent court appearances; (4) and finally, that a GPS monitoring leg bracelet, even though it can easily be removed, would give Defendant "at most, only a few hours head start." (Mem. & Order 23-26.)

This Court, however, cannot agree that these factors overcome the totality of the four considerations that courts are statutorily obligated to consider under 18 U.S.C. § 3142(g), <u>all</u> of which this Court has determined to weigh in favor of detaining Defendant. Defendant's prolonged awareness of the investigation and his decision not to flee is not compelling.

10

An individual in Defendant's position may make a tactical decision to not flee for any number of reasons as a case is under investigation and begins to take shape. The more relevant question is whether there is anything anchoring Defendant to this community that would be sufficient to prevent him from fleeing if, in his assessment, the case develops to a point where fleeing appears to be a better option than facing the reality of potentially spending his final days in prison. Here there is very little, if anything, preventing Defendant from reaching that decision. The only significant tie is his brother and nephew and the residences they have pledged. The Court simply cannot say with any level of confidence that this is sufficient to prevent Defendant from fleeing if he decides to do so once the case against him begins to take shape. While these offers to post bond are certainly a factor that weighs in Defendant's favor, they are not enough to overcome the totality of circumstances described above. Likewise, the Defendant's return to Rhode Island after ten years as a fugitive is uncompelling for the reasons discussed above; and finally, the use of GPS monitoring, while highly effective in most cases, is simply not sufficient in a case with the extraordinary totality of circumstances at play here.

While this is a reasonably close call upon which reasonable minds might have differed, in this Court's view, the Government

11

has proved by a preponderance of the evidence that Defendant is a risk-of-flight and that no conditions or combination of conditions of release could be imposed to reasonably assure Defendant's appearance for future court proceedings (including trial). The Court therefore Orders that Defendant remain detained pending trial.

IT IS SO ORDERED.

*/s/ William E. Smith*
William E. Smith
United States District Judge
Date:  March 28, 2011